19 F.3d 121
 62 USLW 2589, 90 Ed. Law Rep. 33, Bankr.
L. Rep. P 75,762
 Mary Susan MATTHEWS
v.
William PINEO, Esq.; United States of America; National
Health Service Corps; First Eastern Bank; Hahnemann
University; Pennsylvania Higher Education Assistance
Agency, United States of America and the National Health
Service Corps, Appellants.
 No. 93-3401.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 13, 1994.
Decided March 15, 1994.
 
 Gary V. Skiba (Argued), Yochim, Skiba, Moore & Nash, Erie, PA, for appellee.
 Frank W. Hunger, Asst. Atty. Gen., Frederick W. Thieman, U.S. Atty., Mark B. Stern, Jennifer H. Zacks (Argued), Attys., Appellate Staff U.S. Dept. of Justice Civ. Div., Washington, DC, for appellants.
 Before: STAPLETON, COWEN, and ALITO, Circuit Judges.
 OPINION OF THE COURT
 ALITO, Circuit Judge:
 
 
 1
 The United States of America and the National Health Service Corps ("NHSC") have appealed from a district court order that affirmed a bankruptcy court order partially discharging the amount that Dr. M. Susan Matthews owes to the NHSC for breaching her agreement to provide service in the NHSC in exchange for a scholarship to attend medical school. Under 42 U.S.C. Sec. 254o (d)(3)(A), such an obligation is dischargeable in bankruptcy only if nondischarge would be "unconscionable." The bankruptcy and district courts concluded that it would be "unconscionable" not to discharge one-half of Dr. Matthews' current obligation, but we hold that the standard of unconscionability was not met. We therefore reverse.
 
 I.
 
 2
 The National Health Service Corps Scholarship Program, see 42 U.S.C. Secs. 254d-254t, was enacted in 1976 to remedy the problem of maldistribution of health care professionals in the United States. See H.R.Rep. No. 266, 94th Cong., 2d Sess., pt. 1, 22 (1976), reprinted in 1976 U.S.C.C.A.N. 4947, 4964. Under this program, students of medicine and related professions are granted scholarships but must enter into written agreements to provide one year of "obligated service" for each year of educational support (with a minimum service obligation of two years). 42 U.S.C. Secs. 254l (f)-(g). This service must be performed "in a health professional shortage area (designated under [42 U.S.C. Sec. 254e] to which [the scholar] is assigned by the Secretary [of Health and Human Services]." 42 U.S.C. Sec. 254l (f)(1)(B)(iv) (emphasis added). Each scholarship recipient must also agree in writing that, if he or she breaches this commitment, he or she will be liable for liquidated damages of three times the amount of scholarship support received, as well as interest.[1] 42 U.S.C. Sec. 254o (b)(1)(A).
 
 
 3
 Congress has severely limited the conditions under which an NHSC scholarship obligation may be discharged in bankruptcy. Pursuant to a 1987 amendment, such an obligation may be discharged only after the passage of five years and "only if the bankruptcy court finds that nondischarge of the obligation would be unconscionable." 42 U.S.C. Sec. 254o(d)(3)(A).
 
 
 4
 Dr. Matthews received NHSC scholarships, totaling $46,726.00, to attend Hahnemann Medical College in 1979, 1980, and 1981. In return, she signed an agreement to practice for three years in a suitable location selected by the Secretary of HHS. Dr. Matthews also agreed that if she violated this agreement she would be liable for the liquidated damages specified by statute.
 
 
 5
 After graduation from medical school, Dr. Matthews was given a three-year deferment of her service obligation so that she could complete a family practice residency. In July 1984, she was given the opportunity to arrange for the performance of her service obligation at any site designated on the NHSC's Health Manpower Shortage Area Placement Opportunity List as having a vacancy for a physician with her specialty. The Conneaut Valley Health Center in Crawford County, Pennsylvania, was designated on this list as needing an internist, not a physician specializing in family practice. Nevertheless, Dr. Matthews requested placement at the Conneaut Valley Health Center. The NHSC did not grant this request, but instead assigned her to South Dakota.
 
 
 6
 Dr. Matthews made no effort to locate a placement in South Dakota. Instead, she established a practice in the location of her choice, Crawford County, Pennsylvania. She currently divides her time between a private family practice in Saegertown and work at the Conneaut Valley Health Center.
 
 
 7
 As a result of Dr. Matthews' refusal to fulfill her service obligation, the NHSC brought suit against her in the United States District Court for the Western District of Pennsylvania to recover the damages provided by statute. In February 1990, the district court granted summary judgment for the NHSC in the amount of $140,178 plus prejudgment interest.
 
 
 8
 Instead of paying this judgment, Dr. Matthews filed for bankruptcy under Chapter 7 of the Bankruptcy Code and commenced an adversary proceeding to obtain discharge of various student loan obligations, including the obligation stemming from her NHSC scholarship. After both sides in this adversary proceeding moved for summary judgment, the bankruptcy court held that one-half of Dr. Matthews' NHSC obligation, which by then had risen to nearly $400,000, was dischargeable. The court wrote:
 
 
 9
 Considering all of the facts and circumstances of this case, we find the matter unconscionable in two respects--first, it is shockingly unfair for the Debtor to receive all the benefits from the NHSC and then refuse to perform her service obligation. Second, it is outside the limits of what is reasonable to hold the Debtor in a virtual receivership by requiring the repayment of nearly $400,000, which even with the Debtor's income is a near impossibility. The fresh start provisions of the Bankruptcy Code do not contemplate perpetual indebtedness beyond a reasonable repayment period.
 
 
 10
 Matthews v. United States (In re Matthews), 150 B.R. 11, 14 (Bankr.W.D.Pa.1992), aff'd No. 93-00038E (W.D.Pa. June 14, 1993).
 
 
 11
 The NHSC moved for reconsideration and argued that Dr. Matthews could still avoid having to pay liquidated damages if she would simply fulfill her service obligation. The bankruptcy court denied this motion, observing that "to require the Debtor to now close her practice, leave her home and the building in which she practices, possibly separate herself from her husband, and uproot her children's lives for temporary relocation to a NHSC high priority area is outside the limits of what is reasonable." Matthews v. United States (In re Matthews), Ch. 7 Case No. 90-00765E, Adv. No. 90-0133, op. at 2-3 (Bankr.W.D.Pa. Jan. 19, 1993).
 
 
 12
 The NHSC appealed to the district court, but that court affirmed the bankruptcy court's order without opinion. This appeal followed.
 
 II.
 
 13
 Under Section 254o(d)(3)(A), an obligation stemming from a NHSC scholarship is dischargeable in bankruptcy only "if the bankruptcy court finds that nondischarge of the obligation would be unconscionable."[2] In ordinary usage, the term "unconscionable" means "excessive, exorbitant," "lying outside the limits of what is reasonable or acceptable," "shockingly unfair, harsh, or unjust," or "outrageous." Webster's Third New International Dictionary 2486 (1977). In the absence of contrary indications, we presume that Congress, in employing the term "unconscionable" in Section 254o(d)(3)(A), meant to adopt this definition. See Smith v. United States, --- U.S. ----, ----, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993); Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). We note that other bankruptcy courts--and, indeed, the bankruptcy court in this case--have adopted essentially the same definition. See, e.g., In re Green, 82 B.R. 955, 959 (Bankr.N.D.Ill.1988); In re Quinn, 102 B.R. 865, 867 (Bankr.M.D.Fla.1989).
 
 
 14
 Applying this definition, we hold that nondischarge of Dr. Matthews's entire debt would not be "unconscionable." First, we find it significant that the NHSC has presented Dr. Matthews with the option of fulfilling her service obligation even at this late date.[3] As noted, the bankruptcy court felt that it would be "outside the limits of what is reasonable" to require Dr. Matthews to "close her practice, leave her home and the building in which she practices, possibly separate herself from her husband, and uproot her children's lives for temporary relocation to a NHSC high priority area." Matthews, Ch. 7 Case No. 90-00765E, Adv. No. 90-0133, op. at 2-3. This reasoning, however, appears to misapprehend the extremely limited scope of the concept of unconscionability. An option is not "unconscionable" simply because it may be disruptive, unpleasant, undesirable, or painful. Instead, to be "unconscionable" an option must be "shockingly unfair, harsh, or unjust" or "outrageous," and the facts cited by the bankruptcy court and by Dr. Matthews do not show that a temporary relocation to satisfy her service obligation would rise to this level. These facts show little more than that Dr. Matthews and her family would experience some of the ordinary difficulties of relocation, and we do not believe that the ordinary difficulties of relocation can be regarded as "unconscionable." Each year many Americans must uproot their families and move because they are transferred by their employers or because they cannot find satisfactory work where they currently live.
 
 
 15
 Second, even if Dr. Matthews did not have the option of avoiding the payment of liquidated damages by fulfilling her service commitment, she failed to demonstrate that nondischarge of the full amount she owes would be "unconscionable." The bankruptcy court reasoned, based on Dr. Matthews' current income of $85,000 per year, that it would be nearly impossible for Dr. Matthews to pay off her NHSC obligation. Elaborating on this reasoning, Dr. Matthews claims that the annual payments needed to pay off her NHSC obligation and the accumulating interest on this obligation would exceed the difference between her current annual income and her current annual expenses. This argument is flawed, however, because it assumes that, in determining whether nondischarge would be "unconscionable," both Dr. Matthews' current income and her current expenses should be regarded as unalterable. Instead, the proper inquiry is whether it would be "unconscionable" to require Dr. Matthews to take any available steps to earn more income or to reduce her expenses.
 
 
 16
 Dr. Matthews bore the burden of proving unconscionability, and she failed to discharge that burden. She did not point to facts in the summary judgment record establishing that she could not earn more by changing her practice or relocating to a higher paying area, or that requiring her to undergo such changes would be "shockingly unfair, harsh, or unjust." Similarly, she did not point to facts in the summary judgment record showing that it would be "outrageous" to require her to reduce her expenses. The test for unconscionability is not whether repayment of an NHSC obligation would prevent the debtor from maintaining the standard of living of the average physician or the standard of living to which the debtor is accustomed. Average taxpayers subsidize the medical education of NHSC scholarship recipients. Requiring such recipients who flout their service commitments to live like average taxpayers is not "unconscionable."
 
 III.
 
 17
 In sum, we hold that the nondischarge of Dr. Matthews' entire NHSC obligation is not "unconscionable." We will therefore reverse the order of the district court and remand for the entry of an order holding that Dr. Matthews' entire NHSC obligation is nondischargeable.
 
 
 
 [1]
 If the scholarship recipient partially fulfills his or her obligation, the amount of damages is reduced. See 42 U.S.C. Sec. 254 o(b)(1)(A)
 
 
 [2]
 The meaning of the term "unconscionable" is a question of law over which we exercise plenary review. The parties disagree as to whether the bankruptcy court's application of this concept to the facts of this case should be reviewed under the plenary or abuse of discretion standard. We need not decide this question, however, since the bankruptcy court's decision cannot be sustained under either standard
 
 
 [3]
 The NHSC states that it has a general policy of extending this option to scholarship recipients such as Dr. Matthews