*1147
 
 MILES, District Judge.
 

 Ronald L. Rice appeals from an order of the district court which reversed the bankruptcy court’s partial discharge of Rice’s Health Education Assistance Loans (“HEAL loans”) pursuant to 42 U.S.C. § 294f(g),
 
 reco-dified at
 
 42 U.S.C. § 292f(g).
 
 [1]
 
 Rice argues that repayment of the full amount of the debt would be unconscionable, and that the bankruptcy court therefore properly granted a partial discharge. For the reasons to follow, we affirm the district court’s judgment reinstating the full debt.
 

 I
 

 In 1979 and 1980, while a student at the Medical College of Ohio, Ronald Rice obtained HEAL loans from the Chase Manhattan Bank. The principal amounts of the promissory notes, which were guaranteed by the Department of Health, Education and Welfare (now Health and Human Services), totalled $20,000. Rice subsequently left medical school without obtaining a degree. He received three forbearances, and was scheduled to begin repayment in 1986. Rice, however, defaulted on the loans. His default ultimately resulted in Chase Manhattan’s interest in the notes being assigned to the United States.
 

 On December 18, 1989, the United States obtained a default judgment against Rice in the amount of $60,526.92, representing principal, interest, and late charges which had accrued through June 30, 1989. At the time of the judgment, Rice had made payments on the HEAL debt totalling a mere $55.00.
 

 On May 1,1992, Rice and his wife Deborah filed a Chapter 7 petition in the bankruptcy court. At the time they filed the petition, Mr. Rice’s student loans comprised 78 percent of his total indebtedness.
 
 [2]
 
 The Rices were granted a discharge on September 14, 1992. Notwithstanding the discharge, the United States made continued efforts to collect the HEAL debt, contending that the discharge was ineffective against this obligation. Accordingly, on December 9, 1992, Rice filed a complaint in the bankruptcy court to determine the dischargeability of the HEAL debt on the grounds of unconseiona-bility, pursuant to 42 U.S.C. § 292f(g).
 
 [3]
 
 As of that time, Rice’s indebtedness had grown to over $77,000.
 

 Mr. Rice, who is 41 years old, holds a master’s degree and is employed as a teacher with the Toledo Public Schools. Mrs. Rice, who also holds a master’s degree, is employed as an administrator for Bowling Green State University. The parties have stipulated that the Rices’ combined gross annual income is $60,253.32, or $5,021.11 monthly, resulting in a total net monthly income of $3,854.57.
 
 [4]
 
 The parties have also stipulated that the Rices, who have three children, jointly own their own home in Toledo, on which a mortgage of $14,000 is due in five years; that Mr. Rice owns a 1976 Dodge automobile free and clear; and that neither the Rices nor their children have any major health problems.
 

 
 *1148
 
 In the bankruptcy court, both parties moved for summary judgment on the issue of dischargeability. In connection with the motions, Rice filed a brief in which he claimed monthly household expenses for his family totalling $3,810. The bankruptcy court noted that these exceeded, by over 45 percent, the monthly expenditures of $2,624.38 which the Rices had claimed in their Chapter 7 petition filed less than one year earlier. Applying various analytical tests, the bankruptcy court found “no justification” for granting the discharge under any test. However, the bankruptcy court then proceeded to discharge $50,194.46 of the debt — leaving only $27,500 remaining — concluding that it had the equitable power to reduce the debt “to a level which will not inflict unconscionable hardship upon [Rice’s] dependents.” At the time the bankruptcy court issued its decision, Rice had paid only $1,604.39 toward satisfying the debt, at least some of which appears to have been collected through garnishments.
 

 Both parties appealed the bankruptcy court’s decision to the district court. The district court concluded that the bankruptcy court’s decision contravened the controlling statutory authority, which did not authorize discharge absent a determination that non-discharge would be unconscionable. The district court thus reversed the bankruptcy court’s order to the extent that it reduced Rice’s HEAL obligation, but it affirmed the bankruptcy court’s decision in all other respects and dismissed the action. Rice filed this appeal.
 

 II
 

 Title 42 U.S.C. § 292f(g) provides as follows:
 

 A debt which is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under any chapter of Title 11, only if such discharge is granted—
 

 (1) after the expiration of the seven-year period beginning on the first date when repayment of such loan is required, exclusive of any period after such date in which the obligation to pay installments on the loan is suspended;
 

 (2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and
 

 (3) upon the condition that the Secretary [of Health and Human Services] shall not have waived the Secretary’s rights to apply subsection (f) of this section to the borrower and the discharged debt.
 

 The parties do not dispute that subsections (1) and (3) of this statute are satisfied. Therefore, the sole question before us is whether the nondischarge of Rice’s HEAL loans is “unconscionable” under 42 U.S.C. § 292f(g)(2). This is a question of law which we review
 
 de novo. See Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)
 
 25 F.3d 356, 359 (6th Cir.1994) (holding that determination of whether “undue hardship” standard for student loan discharge contained in 11 U.S.C. § 523(a)(8)(B) is satisfied is a question of law subject to
 
 de novo
 
 review),
 
 cert. denied,
 
 — U.S. —, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995).
 
 [5]
 

 Although Congress has not defined the term “unconscionable” as used in § 292f(g), we have little doubt that in using this term it intended to severely restrict the circumstances under which a HEAL loan could be discharged in bankruptcy. We
 
 *1149
 
 therefore conclude, as have other courts, that in employing the term “unconscionable,” Congress intended to adopt the ordinary usage of the term as “excessive, exorbitant,” “lying outside the limits of what is reasonable or acceptable,” “shockingly unfair, harsh, or unjust,” or “outrageous.”
 
 See, e.g., Matthews v. Pineo,
 
 19 F.3d 121, 124 (3d Cir.) (applying term “unconscionable” as used in 42 U.S.C. § 254o(d)(3)(A)), which establishes conditions for discharge in bankruptcy of National Health Service Corps scholarship obligations), cer
 
 t. denied,
 
 — U.S. —, 115 S.Ct. 82, 130 L.Ed.2d 35 (1994). We find the standard imposed by this definition of “un-conscionability” to be significantly more stringent than the “undue hardship” standard established for the discharge of educational loans under 11 U.S.C. § 523(a)(8)(B), which we recently addressed in
 
 Cheesman,
 
 25 F.3d at 359-60.
 
 See In re Malloy,
 
 155 B.R. 940, 945 (E.D.Va.1993) (finding the un-eonscionability standard to be “stricter” than the undue hardship standard),
 
 aff'd,
 
 23 F.3d 402 (4th Cir.1994) (Table);
 
 see also Hines v. United States (In re Hines),
 
 63 B.R. 731, 736 (Bankr.D.S.D.1986) (finding unconscionability to be a “higher standard” than undue hardship). We also conclude that the imposition of such a standard for the discharge of HEAL loans indicates that Congress intended to place the burden on the debtor to prove his entitlement to a discharge.
 
 See Malloy,
 
 155 B.R. at 945;
 
 see also Matthews,
 
 19 F.3d at 124 (applying 42 U.S.C. § 254o(d)(3)(A)). Given the strict nature of the uneonscionability standard, this burden is a heavy one.
 
 See United States v. Kephart,
 
 170 B.R. 787, 791 (W.D.N.Y.1994) (applying 42 U.S.C. § 2540(d)(3)(A)).
 

 In
 
 Cheesman,
 
 although we noted that courts have used a variety of tests in determining what constitutes “undue hardship” under § 523(a)(8)(B), we did not find the occasion to adopt any single test for making this determination. 25 F.3d at 359. In this case, we likewise find the adoption of a single test to be inappropriate. Instead, we believe that bankruptcy courts should examine the totality of the facts and circumstances surrounding the debtor and the obligation to determine whether nondischarge of the obligation would be unconscionable.
 
 Barrows v. Illinois Student Assistance Comm’n (In re Barrows), 182
 
 B.R. 640, 650 (Bankr.D.N.H.1994);
 
 Malloy,
 
 155 B.R. at 945;
 
 Emnett v. United States (In re Emnett),
 
 127 B.R. 599, 602 (Bankr.E.D.Ky.1991). We therefore focus on some of the considerations which we find to be relevant in deciding whether non-discharge would be unconscionable.
 

 In determining whether nondis-charge of the debtor’s HEAL obligation would be unconscionable, the bankruptcy court should be guided principally by such objective factors as the debtor’s income, earning ability, health, educational background, dependents, age, accumulated wealth, and professional degree.
 
 Barrows, 182
 
 B.R. at 650;
 
 Malloy,
 
 155 B.R. at 945;
 
 United States v. Quinn (In re Quinn),
 
 102 B.R. 865, 867 (Bankr.M.D.Fla.1989). Of course, the court should consider the amount of the debt (which here, though not in all cases, has been reduced to judgment), as well as the rate at which interest is accruing. We also believe that the court should examine the debtor’s claimed expenses and current standard of living, with a view toward ascertaining whether the debtor has attempted to minimize the expenses of himself and his dependents.
 
 See Brunner v. New York State Higher Educ. Serv. Corp.,
 
 831 F.2d 395, 396 (2d Cir.1987) (holding that undue hardship standard requires debtor to show,
 
 inter alia,
 
 that he cannot maintain a “minimal” standard of living for himself and his dependents if forced to repay the loans);
 
 see also Matthews,
 
 19 F.3d at 124 (holding that summary judgment denying discharge should have been entered, where record failed to show that requiring debtor to reduce her expenses would be “outrageous”). In addition, the court should examine whether, and to what extent, the debtor’s current situation is likely to continue or improve. See
 
 Brunner,
 
 831 F.2d at 396 (requiring debtor to show that his current situation “is likely to persist for a significant portion of the repayment period”). As part of its examination, the court should further determine whether the debtor has attempted to maximize his income by seeking or obtaining stable employment commensurate with his educational background and
 
 *1150
 
 abilities.
 
 [6]
 
 Even if the debtor is already employed full-time, the court should consider whether the debtor is capable of supplementing his income through secondary part-time or seasonal employment.
 
 See Matthews,
 
 19 F.3d at 124 (“the proper inquiry is whether it would be ‘unconscionable’ to require [the debtor] to take any available steps to earn more income”). If the debtor has dependents, the court should consider whether they are, or could be, contributing financially to their own support. And finally, the court should examine the debtor’s previous efforts to repay the HEAL obligation, including the debtor’s financial situation over the course of time when payments were due; the debtor’s voluntary undertaking of additional financial burdens despite his knowledge of his outstanding HEAL debt; and the percentage of the debtor’s total indebtedness represented by student loans. In other words, we believe the debtor’s good faith to be an appropriate and necessary consideration.
 
 See Brunner,
 
 831 F.2d at 396 (requiring debtor to show that he has made good faith efforts to repay the loans). We stress, however, that the debtor’s good faith or lack thereof should be determined principally with reference to the objective circumstances which we have identified.
 

 Given the extreme nature of Congress’ chosen standard for the discharge of HEAL loans, we believe that in all but the most difficult cases the question of whether the debtor has satisfied that standard will be obvious. We do not find this case to be difficult, and conclude as a matter of law that Rice has failed to show that nondischarge of his HEAL obligation would be unconscionable under any definition of the term. Both Mr. Rice and his wife Deborah hold advanced degrees and stable employment. The family, which is in good health, grosses a not-insubstantial $60,253.32 annually and has little debt with the exception of educational loans. Repayment of the HEAL debt will not force Mr. Rice or his family to maintain a standard of living below or even near the poverty level, which at the time the HEAL discharge was sought was $16,810. Annual Update of HHS Poverty Guidelines,- 58 Fed.Reg. 8287 (1993). Indeed, one observation made by the bankruptcy court — an observation with which Rice has not quarrelled on appeal — was that the Rices’ claimed expenses had, without apparent reasonable justification, undergone a “disturbing” increase over a short period. Under the circumstances, Rice hardly showed that he had attempted to minimize his standard of living. Moreover, he is relatively young as well as healthy, and in all likelihood his income will increase in the future.
 

 We also note, as did the bankruptcy court, that the current substantial amount of the debt was largely Rice’s own doing. His minimal repayments, some made involuntarily, reflect little effort to satisfy the original $20,-000 obligation. This factor weighs particularly strongly against discharge in this case,
 
 *1151
 
 given the absence of evidence (and Rice presented none) of dire financial circumstances preventing him from making a larger impact on the debt, which continued to grow daily. Moreover, that the HEAL loans comprised the bulk of Rice’s indebtedness strongly suggests that their discharge was the motivating factor behind the bankruptcy petition.
 

 Although the bankruptcy court similarly found “no justification” for granting the discharge, it nonetheless concluded that “equity” dictated that nearly two-thirds of the debt should be discharged so as not to inflict “unconscionable hardship” upon the Rice’s children, who were ages 10, seven, and four at the time. We are at something of a loss to comprehend precisely what the court meant by this statement, when it had already unequivocally concluded — as have we — that nondischarge would not be unconscionable to their father. Perhaps the court meant that it did not feel that the children should be forced to give up the private schooling which they were apparently receiving, or the vacations which the family apparently hoped to take.
 
 [7]
 
 Whatever the bankruptcy court’s meaning, we find its exercise of its equitable powers in this manner to be flatly contradicted by the relevant law as set forth in § 292f(g). In
 
 Cheesman,
 
 we recognized that 11 U.S.C. § 105(a) gives bankruptcy courts certain equitable powers. 25 F.3d at 360.
 
 [8]
 
 However, we indicated that those powers must be exercised within the confines of, or consistent with, the Bankruptcy Code.
 
 Id.
 
 Similarly, we believe that those powers must be exercised in a manner consistent with federal statutes addressing the conditions under which discharges may be granted, even where those statutes are not a part of the Bankruptcy Code.
 

 Although we have indicated that the debtor’s dependents are a relevant consideration in determining whether nondis-charge would be unconscionable, they are relevant only insofar as the bankruptcy court must ascertain what amount is minimally necessary to ensure that the dependents’ needs for care, including food, shelter, clothing, and medical treatment are met. Because the HEAL discharge standard is a particularly stringent one, the court must necessarily be unforgivingly critical in its assessment of the debtor’s claimed expenses for himself and his dependents. If requiring the debtor to make sacrifices in order to repay his HEAL obligation is not “shockingly unfair, harsh, or unjust,” nor is requiring the debtor’s dependents to endure a lower standard of living than the family’s earnings could otherwise provide. To hold otherwise would be unfair to the creditor, who has no control over the debtor’s decisions regarding' the undertaking of familial obligations. We mean not to be unsympathetic to the Rice children, but we must recognize that § 292f(g) simply does not recognize the application of two different standards of dis-chargeability, one for the debtor and one for his dependents. In sum, we hold that § 105(a) does not authorize bankruptcy courts to reduce an otherwise nondischargeable loan on the basis of perceived unfairness to the debtor’s dependents.
 

 As a final matter, we stress that we find it unnecessary in this case to decide whether a bankruptcy court may, consistent with the Bankruptcy Code and/or § 292f(g), exercise its equitable powers to grant a partial discharge of a HEAL debt, for, as we have concluded, nondischarge of the full amount of Rice’s debt is not unconscionable. We also note that this ease does not require us to decide whether a bankruptcy court may exercise its equitable powers to grant other forms of relief from such debts. In
 
 Cheesman,
 
 we have already authorized postponement of the discharge determination under appropriate circumstances. 25 F.3d at 360-61. However, such a postponement would not be warranted in this case even if Rice had requested it. Similarly, Rice has not requested the
 
 *1152
 
 establishment of a repayment plan or a deferment of repayment.
 
 [9]
 
 We therefore express no opinion on the permissibility of such relief, and reserve resolution of these questions for another day and in another case in which these issues have been fully developed by the parties.
 

 Ill
 

 For the foregoing reasons, we conclude that Rice’s HEAL obligation was nondis-chargeable, and we therefore AFFIRM the judgment of the district court.
 

 [1]
 

 . In 1992, Congress amended the legislation governing the federal loan insurance program for graduate students in health professions schools. These amendments included the omission of § 294f, which contained the conditions for discharge of HEAL loans, and the reenactment of identical conditions in § 292f(g).
 
 In re Malloy,
 
 155 B.R. 940, 942 n. 1 (E.D.Va.1993),
 
 aff'd,
 
 23 F.3d 402 (4th Cir.1994) (Table). We shall refer to the relevant statute using its current designation, § 292f(g).
 

 [2]
 

 . Deborah Rice’s own student loans, which are not at issue here, comprised an additional 18 percent of the couple’s indebtedness. Therefore, 96 percent of the debts to be discharged on their joint petition were student loans.
 

 [3]
 

 . Rice's reliance on 42 U.S.C. § 292f(g) began as an alternative position. In the bankruptcy court, he argued that 11 U.S.C. § 523(a)(8) should be applied instead of 42 U.S.C. § 292f(g), and that the HEAL debt, which became due more than seven years before the date of the filing of the bankruptcy petition, should have been discharged as a matter of course in the Chapter 7 proceedings. Both the bankruptcy court and the district court rejected this argument, and Rice has not challenged this conclusion on appeal. We note, however, that other courts have concluded that the dischargeability of HEAL loans is governed by § 292f(g).
 
 E.g., In re Johnson,
 
 787 F.2d 1179, 1181-82 (7th Cir.1986).
 

 [4]
 

 .Mr. Rice earns a gross monthly income of $2,937.78, resulting in a net monthly income of $2,273.44. Mrs. Rice earns a gross monthly income of $2,083.33, resulting in a net monthly income of $1,581.13.
 

 [5]
 

 . Rice argues that the district court should have merely determined whether he had raised material questions issues of fact regarding unconscio-nability, pursuant to Fed.R.Civ.P. 56. He further argues that because "reasonable persons” could conclude that enforcement of his HEAL debt
 
 in toto
 
 would be unconscionable, the district court improperly granted the United States’ motion for summary judgment. Rice's argument incorrectly assumes the determination of unconscionability to be a question of fact. Where, as here, many of the relevant facts (particularly those pertaining to the debtor's employment and income) are stipulated, no questions of fact remain which prevent entry of summary judgment on the controlling legal question of unconscionability.
 
 See Brunner v. New York State Higher Educ. Serv. Corp.,
 
 831 F.2d 395, 396 (2d Cir.1987) (determining what constitutes "undue hardship” under 11 U.S.C. § 523(a)(8)(B) "requires a conclusion regarding the legal effect of the bankruptcy court’s findings as to [debtor's] circumstances”). We also note, not incidentally, that Rice’s own motion papers invited the bankruptcy court to rule on the issue of dischargeability as a matter of law.
 

 [6]
 

 . We note that Rice has argued that his failure to graduate from medical school and become a physician is a relevant consideration because § 292f(g)'s discharge provisions were adopted to prevent physicians, as high-income professionals, from exploiting the bankruptcy system to avoid repaying the loans which made their high income possible. We generally agree that this intent is at least implicit in the severe standard adopted by Congress for discharge of HEAL loans.
 
 See United States v. Lee,
 
 89 B.R. 250, 255 (N.D.Ga.1987) (concluding that Congress imposed "more stringent repayment obligations on HEAL borrowers” because they "are entering the very lucrative health care profession” and “Congress intended to prevent HEAL borrowers from attempting to eliminate sizeable student loan debt, paid from tax dollars, before commencing a highly remunerative profession”),
 
 aff'd sub nom. United States v. Hochman,
 
 853 F.2d 1547 (11th Cir.1988). However, we agree with other courts which have rejected the application of a "policy test” which includes the failure to obtain or to benefit financially from the financed degree as a separate mitigating consideration in determining whether a student loan is dischargeable.
 
 Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish),
 
 72 F.3d 298, 305 (3d Cir.1995);
 
 In re Roberson,
 
 999 F.2d 1132, 1136-37 (7th Cir.1993). Though the United States guaranteed repayment of the sums which Rice borrowed from the Chase Manhattan Bank, it did not guarantee his educational success.
 
 See id.
 
 at 1136. Therefore, although the debtor’s failure to obtain the degree financed by the HEAL loan is relevant insofar as it impacts on his overall educational background and earning ability, we stress that the debtor's disappointed expectations of a higher standard of living should play no part in the determination of whether the debtor has established his entitlement to a discharge.
 

 [7]
 

 . We note that Rice’s claimed monthly expenses included $200 for school tuition for the children. Because the parties have stipulated that the children are healthy, we presume that they do not have special educational needs. We also note that the claimed expenses included a $100 amount for "Recreation/vacations.”
 

 [8]
 

 . Title 11 U.S.C. § 105(a) authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.”
 

 [9]
 

 .
 
 See generally Sands v. United Student Aid Funds, Inc. (In re Sands),
 
 166 B.R. 299, 312-13 (Bankr.W.D.Mich.1994) (discussing "interesting remedies ... sometimes fashioned by courts” including payment schedules, partial discharge, and deferment of repayment). Although some forms of relief have found acceptance, such as deferment,
 
 see Roberson,
 
 999 F.2d at 1138, others are more controversial.
 
 See Barrows v. Illinois Student Assistance Comm’n. (In re Barrows),
 
 182 B.R. 640, 653 (Bankr.D.N.H.1994) (denying student loan debtor's request for repayment plan in Chapter 7 proceeding, but noting that "a number of courts have in effect granted partial discharges under [11 U.S.C. § 523(a)(8) and 42 U.S.C. § 292f(g) ], have approved various repayment plans, and, on occasion, have even retained jurisdiction to supervise such repayments”);
 
 Wardlow v. Great Lakes Higher Educ. Corp. (In re Wardlow),
 
 167 B.R. 148, 152-53 (Bankr.W.D.Mo.1993) (declining student loan creditor's invitation to restructure repayment period, concluding that “Congress did not intend bankruptcy courts to restructure student loans in Chapter 7 cases but only to determine their dis-chargeability”).