### Larry Alan RODGERS, Debtor.

### Larry Alan Rodgers, Plaintiff,

v.

### Ohio College of Podiatric Medicine, et al., Defendants.

Bankruptcy No. 98–55541.
Adversary No. 98–0439.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

June 23, 2000.

Sara J. Daneman, Gahanna, Ohio, for Debtor.

Michael P. O'Grady, Columbus, Ohio, for United States Department of Health and Human Services.

Alexander G. Barkan, Assistant United States Trustee, Columbus, Ohio.

### MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL, Bankruptcy Judge.

This adversary proceeding is before the Court upon the complaint filed by the Debtor, Larry Rodgers, who seeks a determination of the dischargeability of certain Health Education Assistance Loans ("HEAL Loans"). For the reasons that

follow, the Court holds that the Debtor's HEAL Loans are nondischargeable.

The Debtor is fifty years old. He is married and lives with his wife. He has three children from prior relationships, aged 21, 19 and 14, who do not reside with him. The Debtor does not claim his children as dependents. He owes arrearage on child support obligations which total approximately $35,000.00.

The Debtor has been employed since 1996 as a shipping clerk, earning $12.34 per hour, which provides a gross monthly income of $2,138.93. His wife's annual salary is $31,000.00. The Debtor's household's gross annual income totals $56,667.16. From the Debtor's gross wages, deductions are taken for payroll taxes ($440.05 per month), child support and related arrearage ($596.96 per month), and contributions to his employer's 401k plan ($85.67 per month), leaving net monthly income of $1,016.25. The Debtor's monthly expenses are approximately $955.00, including a $305.00 monthly payment for a used automobile he purchased within the last two years. Other expenses include amounts devoted to food, clothing, car insurance, transportation, medical expenses, and contributions toward household utilities. The difference between the Debtor's net income and expenses leaves disposable income of $61.25 per month.

The home in which the Debtor lives is owned by his wife, and he does not contribute to her mortgage payment. The Court received no evidence as to the nature and amounts of the Debtor's wife's other expenses, if any. The Debtor has no savings, owns no real property, and has no investments, other than having made a few payments into his employer's 401k plan. He also testified that he and his wife own no joint assets.

The Debtor has had significant health problems. He readily admitted to having been an alcoholic since at least 1987, having begun drinking near the end of his first marriage in 1983. He testified to drinking at least six beers a day, including at least one before leaving for work each morning. He has been reprimanded for smelling of alcohol at work on one occasion. The Debtor also admits never having sought any treatment for his alcoholism. In 1995, the Debtor was diagnosed with colo-rectal cancer, and underwent a total proctocolectomy with ileostomy in March 1996. The ileostomy is permanent. He testified that he has not suffered a recurrence of the cancer, and that his condition is stable and is monitored by a physician on an annual basis. Other than not being able to lift heavy items, which is not required of him at work, the Debtor does not appear to have suffered ill effects as a result of having had cancer and the related surgery. The Debtor also testified that he was diagnosed with agoraphobia in 1984 or 1985. No evidence of this diagnosis was presented, other than the Debtor's uncorroborated testimony. The Debtor has sought no treatment for his agoraphobia.

The Debtor received an undergraduate degree in chemistry from David Lipscomb College. The Debtor attended the Ohio College of Podiatric Medicine from 1980–1984, and attempted to re-enroll in 1985. He did not complete his training. In order to pay for podiatry school, the Debtor sought and obtained $70,000.00 in HEAL Loans. The Debtor has made no attempt whatsoever to repay the HEAL Loans.

The original lenders were Chase Manhattan Bank and First American Bank. The loans subsequently were purchased by the Student Loan Marketing Corporation ("SLMC"). On June 29, 1989, SLMC sued for the principal amount of the HEAL Loans, plus accrued interest. On October 24, 1989, SLMC obtained a default judgment against the Debtor in the amount of $131,275.68. Interest was awarded as well, but this Court received no evidence as to the rate at which it is accruing. On February 21, 1990, the United States Department of Health and Human Services received an assignment of the judgment.

It is undisputed that the judgment, as of June 19, 1999, totaled $262,191.54.

The Debtor filed his petition for relief under chapter 7 of the Bankruptcy Code on June 8, 1998. Other than child support arrearage with a scheduled value of $35,000.00 and an $11,000.00 deficiency claim on a motor vehicle, the Debtor's pre-petition debt consisted entirely of the HEAL Loans.

On December 1, 1998, the Debtor commenced this adversary proceeding. Named as defendants were the Ohio College of Podiatric Medicine, the United States Department of Education, "GC Services," the United States Department of Justice, the Student Loan Marketing Association, and the "CBA." On February 9, 1999 the Debtor filed a motion seeking judgment by default against all defendants. On February 24, 1999, the United States Department of Justice filed a memorandum in opposition to the motion for default judgment, arguing that the Debtor had failed to serve the United States with process in accordance with applicable procedural rules. After a hearing, the Court entered an agreed order granting default judgment against all defendants except the United States, and substituting the Department of Health and Human Services for the Department of Justice. The Department of Health and Human Services filed its answer on June 25, 1999, and from there, this adversary proceeded in due course to a trial that was first convened on May 1, 2000, and continued to and concluded on May 10, 2000.

At trial, the Debtor argued that the agreed order which, *inter alia*, granted a default judgment against SLMC, also bound the Department of Health and Human Services as assignee of SLMC's interest. The Court finds this argument to be without merit. The Department of Health and Human Services took its assignment in 1990. Therefore, it is doubtful that SLMC had any interest in the outcome of this adversary proceeding, and certainly none that would impact the standing of the Department of Health and Human Services.

The dischargeability of HEAL Loans in bankruptcy cases is governed by 42 U.S.C. § 292f(g). *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir.1991). Section 292f provides, in pertinent part:

(g) Conditions for discharge of debt in bankruptcy

Notwithstanding any other provision of Federal or State law, a debt that is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under any chapter of Title 11, only if such discharge is granted—

(1) after the expiration of the first five-year period beginning on the first date when repayment of such loan is required;

(2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and

(3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.[1]

The Debtor and the Department of Health and Human Services have stipulated that subsection (1) of section 292f(g) has been satisfied. In its answer, the Department of Health and Human Services asserted that subsection (3) has been satisfied as well, and the Debtor has never challenged this assertion. Therefore, the only issue to be determined is whether the nondischarge of the Debtor's HEAL Loans would be unconscionable.

---

1. This is the version of 42 U.S.C. § 292f(g) that was in effect when the Debtor became obligated on the HEAL Loans. The current version of the statute requires the loans to have been due and owing for at least seven years in order to be eligible for discharge in a bankruptcy case. This appears to be the only difference between the former and current versions of section 292f(g).

 The seminal case on this issue is *Rice v. United States (In re Rice )*, 78 F.3d 1144 (6th Cir.1996). In construing the term "unconscionable," the Sixth Circuit held that it is akin to "excessive, exorbitant," or "shockingly unfair, harsh or unjust." *Rice*, 78 F.3d at 1149. The *Rice* court further concluded that this definition imposes a standard that is "significantly more stringent than the 'undue hardship' standard established for the discharge of educational loans [under section 523(a)(8) of the Bankruptcy Code]." *Id.; Accord, In re Malloy*, 155 B.R. 940, 945 (E.D.Va.1993) *aff'd* 23 F.3d 402 (4th Cir.1994)(Table); *Hines v. United States (In re Hines)*, 63 B.R. 731, 736 (Bankr.D.S.D.1986). The burden of proving entitlement to a discharge of HEAL Loans lies with the debtor. *Rice*, 78 F.3d at 1149. Rather than adopting a hard and fast test for determining the dischargeability of HEAL Loans, the Sixth Circuit held that bankruptcy courts "should examine the totality of the facts and circumstances surrounding the debtor and the obligation to determine whether nondischarge of the obligation would be unconscionable." *Id.*

 There can be no doubt that this debtor is not a wealthy man. He has been, however, consistently employed and it appears that the physical challenges he has faced will not prevent him from working well into the foreseeable future. While he expressed dissatisfaction with his current income and professed to constantly searching for alternate employment, he could not remember precisely what other jobs he has applied for, nor when he allegedly submitted applications. He admitted he has not sought employment in addition to that he has now, whether on a permanent or seasonal basis. Without additional employment, it is unlikely the Debtor's income will increase significantly over the coming years.

As to the Debtor's living expenses, the Court finds them reasonable. The Debtor's financial situation is strengthened by the fact that his wife appears to be financially self-sufficient, and by the fact that his children are not claimed as dependents.

Most troubling to this Court, however, is the Debtor's determined unwillingness to make any effort to repay his HEAL Loans. He has not made a single payment toward this debt, and offered no credible explanation why. Certainly his life has not been an easy one, but the challenges with which he has been presented should not prevent him from leading a productive life. The Debtor attempted to argue that his alcoholism was severe, and should serve in large measure to excuse him from his obligation to repay the HEAL Loans. The Court, while sympathetic, cannot agree, particularly where the Debtor has made no voluntary attempt whatsoever to obtain counseling or to stop drinking. This Debtor appears unwilling to help himself, and given this fact, the Court does not find the nondischarge of the HEAL Loans to be shockingly unfair or unconscionable.

Accordingly, the Court holds that the Debtor's HEAL Loans are **NONDISCHARGEABLE**.

**IT IS SO ORDERED.**