**In re Michael BORRERO, Debtor.**

**Michael BORRERO, Plaintiff,**

v.

**CONNECTICUT STUDENT LOAN FOUNDATION, Key Bank of Maine, New York Medical College, New York State Higher Education Services Corporation and Sallie Mae, Defendants.**

**Bankruptcy No. 94–52278.**
**Adversary No. 95–5049.**

United States Bankruptcy Court,
D. Connecticut.

May 30, 1997.

Myles H. Alderman, Alderman & Alderman, Hartford, CT, for Plaintiff.

Robin B. Kipnis, Rocky Hill, CT, for Defendant Connecticut Student Loan Foundation.

Richard Coan, Coan, Lewendon, Royston, Deming & Gulliver, New Haven, CT, Chapter 7 Trustee.

John J. McGrath, Office of Counsel, NYSHESC, Albany, NY, for New York State Higher Education Services Corp.

Deirdre A. Martini, Assistant U.S. Attorney, Bridgeport, CT, for U.S. Department of Health and Human Services.

James S. Rollins, Bingham, Dana & Gould, Hartford, CT, for United Student Aid Funds, Inc.

## MEMORANDUM AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT UNDER CODE § 523(a)(8)(B) AND 42 U.S.C. § 292f(g)

ALAN H.W. SHIFF, Chief Judge.

This adversary proceeding seeks a determination by the plaintiff that his student loan debts are dischargeable under § 523(a)(8)(B) because the repayment of the loans would

impose an "undue hardship." The United States of America, Department of Health and Human Services ("DHHS"), argues that the dischargeability of its loans should be considered under 42 U.S.C. § 292f(g) and joins the other defendants in objecting to the dischargeability of the student loans.[1] For the reasons that follow, it is concluded that the student loan debts other than those of Key Bank of Maine and New York Medical College are nondischargeable.

## BACKGROUND

The relevant facts are not in substantial dispute, the parties having filed a Stipulation of Facts on June 21, 1996. The plaintiff is 34 years old, unmarried, in good health, and has no dependents. *Tr.* at 23. He graduated from Wesleyan University in 1984 with a Bachelor's Degree in Psychology and continued his studies at New York Medical College.

> The [p]laintiff borrowed, and the [d]efendants (other than CSLF [Connecticut Student Loan Foundation]) either directly loaned or, pursuant to statutory authority, guaranteed loans of specific amounts of money for the purpose of funding the [p]laintiff's medical education. At the times that the money was borrowed, or guaranteed pursuant to statutory authority, the plaintiff had a good faith expectation that he would become a doctor and that the ability to repay all of his loan obligations would be within his means.

*Stipulation of Facts,* ¶ 7 (footnote omitted). Each of the loans was "insured or guaranteed by a governmental unit, or made under a program funded in whole or in part by a governmental unit," 11 U.S.C. § 523(a)(8). *Closing Arguments, 10/31/96, Tape at 1204–33.*

The plaintiff was involuntarily dismissed from the New York Medical College in 1992 after six years of attendance. *Stipulation of Facts.* ¶ 9. *See also Tr.* at 12–13. The dismissal followed the denial of his request for a leave of absence after the death of his fiancé.[2] *Stipulation of Facts,* ¶¶ 8, 9. *See also Tr.* at 11–13. After dismissal from medical school, the plaintiff secured employment with the Westchester County Medical Center as a phlebotomist. *Id.* at 24. The plaintiff is currently employed as a lab technician with the Westchester County Health Department. *Stipulation of Facts,* ¶ 12. *See also Tr.* at 16. The plaintiff's projected gross income for 1996 will be approximately $31,000.00. *Stipulation of Facts,* ¶ 13. His gross salary was $26,686.75 in 1994 and $29,483.46 in 1995. *Id.* Exhibits L and M. The plaintiff has no other source of income, receives no public assistance, and "has been unable to obtain the additional funding necessary to pay for an additional year of medical school." *Complaint,* ¶ 16; *see also Tr.* at 32.

The plaintiff made fifteen payments to CSLF totaling $1,301.10 before defaulting on March 21, 1994. *Stipulation of Facts,* ¶¶ 1G, 1H. He did not make any payments on any of the other loans, and he did not enter into repayment plans with any of the defendants. *Id.* at ¶ 22.

The plaintiff filed a chapter 7 petition on December 23, 1994. Schedule B listed personal property of $2,003,192.86, including a $2,000,000.00 "possible claim against New York Medical College." Schedule F listed $221,895.87 in unsecured, nonpriority disputed debt, $213,068.54 of which consisted of

1. Defendants DHHS, United Student Aid Funds, Inc., and Connecticut Student Loan Foundation have each asserted counterclaims against the plaintiff. None of those defendants, however, moved for relief from the automatic stay to assert counterclaims. Those parties have since conceded that those counterclaims should not be addressed by this decision. *Closing Arguments, 10/31/96, Tape at 1174–78.*

2. At trial, the plaintiff testified as follows:
   I was—my fiancé passed away in February. I was doing poorly in school. I was approached by the—I had done poorly in school earlier and was approached by the chairman of the department who said that I should go to the dean and take a leave of absence, that if I failed the finals. that I would be dismissed from school and it would be too much pressure. So I went to the dean. The dean said that under the chairman's authority, I could not just take a leave of absence and I had to go before the committee. The committee said they were sorry about my personal life, but that I could not take a leave. In fact, I was dismissed from school.
   *Tr.* at 11–12.

student loans. Schedule I listed the plaintiff's net monthly income as $1,467.14, and Schedule J listed monthly expenditures of $1,027.00. The plaintiff received a discharge of his dischargeable debts on March 28, 1995.

On June 21, 1996, a default judgment entered against Key Bank of Maine and New York Medical College for failure to appear, answer, or defend, and the debts of those defendants in the aggregate amount of $30,-414.25 were deemed dischargeable. *See June 21, 1996 Order.* The plaintiff claims that it would be an undue hardship for him to repay the remaining student loans.

As of October 31, 1996, the principal amount of the following debts was owed:

(i)   CSLF: $9,523.02;

(ii)  United Student Aid Funds, Inc. ("USA Funds"): $8,192.14; [3]

(iii) New York State Higher Education Services Corporation ("NYSHESC") $36,510.53; and

(iv)  DHHS: $112.313.95.[4]

*See February 13, 1997 Stipulation.*

It is conceded that the CSLF, USA Funds, and NYSHESC loans do not qualify as loans made under the Health Education Assistance Loan ("HEAL") program, and the nondischargeability of those loans ("nonHEAL debts") should be analyzed under § 523(a)(8)(B). *Tr.* at 4. The DHHS loan was made under the HEAL program. DHHS and the plaintiff disagree as to whether the dischargeability of that debt ("HEAL debt") should be analyzed under § 523(a)(8)(B) or the more stringent standard applicable to 42 U.S.C. § 292f(g). *Id.* at 5. The plaintiff argues that even if § 292f(g) is controlling, it should be read disjunctively so that compliance with either subdivision (1) or (2) would result in the discharge of the HEAL debt. *Closing Argu-*

**3.** This loan was assigned by Chase Manhattan Bank, N.A. to the Student Loan Marketing Association ("Sallie Mae"). On May 11, 1995, Sallie Mae further assigned the loan to USA Funds. *Stipulation of Facts,* ¶ 2.

**4.** Chase Manhattan Bank, N.A. loaned the principal mount of $76,201.00 to the plaintiff under the Health Education Assistance Loan program, implemented pursuant to Title VII of the Public

*ments, 10/31/96, Tape at 86–260. See also Plaintiff's Memorandum* at 7.

## DISCUSSION

### I

### *Section 523(a)(8)(B)*

Code § 523(a)(8)(B) provides:

(a) A discharge under 727 ... of this title does not discharge an individual debtor from any debt—

(8) for ... loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

...

(B) excepting such debt from discharge under this paragraph will impose an *undue hardship* on the debtor and the debtor's dependents....

11 U.S.C. § 523(a)(8)(B) (West 1993) (emphasis added).

■ The issue under § 523(a)(8)(B) is whether a debtor has sustained the burden of proving by a fair preponderance of the evidence, *see Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991), that the repayment of a student loan would impose an "undue hardship." *Connecticut Student Loan Foundation v. Keenan (In re Keenan),* 53 B.R. 913, 916 (Bankr. D.Conn.1985). *See also Woodcock v. Chemical Bank, NYSHESC (In re Woodcock),* 45 F.3d 363, 367 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 97, 133 L.Ed.2d 52 (1995); *Holtorf v. Illinois Student Assistance Commission (In re Holtorf),* 204 B.R. 567, 569 (Bankr.S.D.Cal.1997). In considering that issue, bankruptcy courts have uniformly read that section narrowly.

Health Service Act, 42 U.S.C. § 292 *et. seq.* The loan debt was subsequently purchased by Sallie Mae, which filed an insurance claim with DHHS on May 9, 1995, and was paid $101,349.29, consisting of $76,201.00 in principal and $25,148.29 in interest calculated to May 19, 1995. DHHS was subsequently assigned the loan notes. *Stipulation of Facts,* ¶ 4.

*Connecticut Student Loan Foundation v. Keenan, supra* at 917.

A three prong test has been adopted in this circuit:

> (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for [himself] and [his] dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

*Brunner v. New York State Higher Education Services Corp. (In re Brunner)*, 46 B.R. 752 (S.D.N.Y.1985), *aff'd*, 831 F.2d 395, 396 (2d Cir.1987). In formulating that test, the district court recognized that student loans are made by the government "at a fixed rate of interest, and it does so almost without regard for credit worthiness." *In re Brunner, supra*, 46 B.R. at 756. In return, the government imposes a "quid pro quo" through § 523(a)(8) which essentially strips "individuals of the refuge of bankruptcy in all but extreme circumstances." *Id.*

■ A narrow reading of § 523(a)(8)(B) would not frustrate the fresh start policy underlying the bankruptcy code since "it is abundantly clear from both the legislative history and the text of the Bankruptcy Code itself that Congress meant to bar the discharge of educational loans...." *Johnson v. Edinboro State College*, 728 F.2d 163, 164 (3d Cir.1984) (citations omitted). *See also A.L. Lee Memorial Hospital v. McFadyen (In re McFadyen)*, 192 B.R. 328, 331 (Bankr. N.D.N.Y.1995) ("Congress ... saw fit to exclude certain obligations, including educational loans, from the general policy of discharge").

### Minimal Standard of Living

The plaintiff has no dependents, and he has not offered evidence of any physical or emotional incapacity. Thus, his claim that the nondischargeability of his nonHEAL debts would impose an "undue hardship" is based solely upon financial considerations, i.e., currently he does not earn enough to support himself and repay his student loans. *See Plaintiff's Reply Memorandum* at 2.

■ On December 23, 1994, the plaintiff filed Schedules I and J with his petition which listed income in excess of expenses. The June 21, 1996 Stipulation of Facts. however, listed expenses that were more than twice the amount reported in his schedules. *See Stipulation of Facts,* ¶ 15. Even if the expenses listed in the Stipulation of Facts accurately reflect the plaintiff's current financial condition, that alone is insufficient to satisfy the first prong of the undue hardship test. The plaintiff has failed to establish a minimal standard of living base line, i.e., that the reported expenses were reasonable and necessary for a single person his age and state of health, who has no dependents. The failure to meet one of the prongs of the *Brunner* test is fatal to the plaintiff's action.

### Additional Circumstances

■ Even had the plaintiff satisfied the minimal standard of living element, his non-HEAL debts would not be discharged. The plaintiff must establish under the second prong of the *Brunner* test that "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner, supra*, 831 F.2d 395, 396. As noted in *Briscoe v. Bank of New York (In re Briscoe)*, 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981), "dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *See also Barrows v. Illinois Student Assistance Commission (In re Barrows)*, 182 B.R. 640, 648–49 (Bankr.D.N.H.1994) ("Current financial adversity, characteristic of all debtors in bankruptcy court, is not a determinative factor in establishing dischargeability").

■ The evidence does not warrant a conclusion that the plaintiff's earning capacity is limited to a level below his ability to repay his student loans. Indeed, the evidence is to the contrary. He has held steady employment since his dismissal from medical

school.[5]  *Tr.* at 24.  He has received two salary increases, *id.* at 23–25, and he concedes that his salary will increase to $35,-000.00 within the next few years.  *Stipulation of Facts,* ¶¶ 13–14.  Moreover, the plaintiff's financial condition has been improved by the discharge of debts totaling $39,241.58.  Having determined that the plaintiff has failed to satisfy the first and second prongs of the *Brunner* test, it is unnecessary to address the final element of that test.

## II

### 42  U.S.C. § 292f(g)

Section 42 U.S.C. § 292f(g) provides that: A debt which is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under any chapter of Title 11, only if such discharge is granted—

(1) after the expiration of the seven-year period beginning on the first date when repayment of such loan is required, exclusive of any period after such date in which the obligation to pay installments on the loan is suspended;

(2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; *and*

(3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.

42 U.S.C. § 292f(g) (West 1997) (emphasis added).[6]

Each of the promissory notes executed by the plaintiff contains express language that "[t]he terms of this [n]ote shall be construed according to the Law (42 U.S.C. §§ 294–294f) and the Federal regulation (42 CFR Part 60) governing the administration of the [HEAL] Program. . . ."  *Stipulation of Facts,* Exhibit K at 2. The notes also specified that the debt would not be discharged in bankruptcy unless the three requirements stated in § 294f(g) were satisfied.  *Id.*  Notwithstanding that express language, the plaintiff contends that § 523(a)(8)(B) governs the determination of the dischargeability of the HEAL debt.  DHHS counters that the appropriate section for analysis is § 292f(g).

The plaintiff has cited no authority for his position.  Moreover, all of the authority found by this court and provided by DHHS support its position.  *See, e.g., United States v. Rice,* 182 B.R. 759, 760–61 (N.D.Ohio 1994), *aff'd* 78 F.3d 1144 (6th Cir.1996) (citations and footnote omitted) ("The bankruptcy court properly determined . . . that the dischargeability of [HEAL obligations] is governed by 42 U.S.C. 292f(g), which specifically addresses health profession loans"); *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991) ("The dischargeability of a HEAL loan is governed by 42 U.S.C. § 294f(g)"); *Joyner v. United States (In re Joyner),* 146 B.R. 232, 233 (Bankr.W.D.Mo.1992) (citations omitted) ("[C]ourts have unanimously held

**5.** The plaintiff did not return to medical school, and he did not receive a medical license.  In determining the dischargeability of student loans, some courts have declined to give any weight to the noncompletion or minimal utility of the education funded by the loans.  *See, e.g., Rice v. United States (In re Rice),* 78 F.3d 1144, 1150 n. 6 (6th Cir.1996) ("[A]lthough the debtor's failure to obtain the degree financed by the HEAL loan is relevant insofar as it impacts on his overall educational background and earning ability, we stress that the debtor's disappointed expectations of a higher standard of living should play no part in the determination of whether the debtor has established his entitlement to a discharge"); *In re Brunner, supra,* 46 B.R. at 756, n. 3 ("[A] student loan is an investment, but it is for the borrower, not the taxpayers, to evaluate the wisdom of the investment and bear the risks and burden if the investment proves improvident").

**6.** In 1992, Congress completely revised the legislation governing the federal program that insures loans to health professions graduate students.  *See* Pub.L. No. 102–408, (October 13, 1992).  *See also In re Rice, supra,* 78 F.3d at 1147 n. 1; *In re Malloy,* 155 B.R. 940, 942 n. 1 (E.D.Va.1993), *aff'd,* 23 F.3d 402 (1994).  The effect of the 1992 amendments was to "omit" § 294f(g), which originally set out the criteria for the discharge of HEAL loans, and recodify that provision at § 292f(g) in essentially the same form. with the exception of specifically excluding suspension periods from the calculation of the appropriate time period under subsection (a).  *Id.*  A further amendment in 1993 increased the time period in subsection (a) from five to seven years.  *See* Pub.L. No. 103–43 (June 10, 1993).  Because of the derivation of § 292f(g), much of the relevant caselaw analyzes former § 294f(g) but is nonetheless applicable to the analysis here.

that the HEAL statute rather than the Bankruptcy Code governs the dischargeability of a HEAL loan"); *See also* 136 Cong.Rec. H13288–02, *H13289 (1990) (statement of Rep. Brooks).

■ Section § 292f(g) requires a showing by the debtor that the denial of discharge would be, *inter alia,* "unconscionable." That showing has been held to be a more burdensome standard than "undue hardship" under § 523(a)(8)(B). *See e.g., In re Rice, supra,* 78 F.3d at 1149 ("We find the standard imposed by ... 'unconscionability' to be significantly more stringent than the 'undue hardship' standard established for the discharge of educational loans under 11 U.S.C. § 523(a)(8)(B)"); *United States v. Wood, supra,* 925 F.2d at 1583 ("[T]he requirements of section 294f(g) are more stringent than those in section 523(a)(8)"); *United States v. Kephart,* 170 B.R. 787, 791 (W.D.N.Y.1994) (Interpreting a similar discharge provision, 42 U.S.C. § 254o(d)(3)(A), the court determined that "[t]he concept of 'undue hardship' is stringent enough but clearly the requirement of unconscionability requires an even greater showing before discharge is appropriate"). Further, the 1993 amendment to Title VII of the Public Health Service Act was intended to "tighten standards under which students defaulting on Federally insured HEAL loans may discharge those debts in bankruptcy." H.R.Conf.Rep. No. 103–100, at 256 (1993). As the plaintiff has failed to satisfy the undue hardship test, it follows *a fortiori* that he has not satisfied the higher standard imposed by § 292f(g).

The plaintiff alternatively argues that the three requirements of § 292f(g) should be read disjunctively. He attempts to buttress that argument by reference to § 523(a)(8)(A) which is separated from (B) with the disjunctive "or." The fallacy of that argument is underscored by the fact that the applicability of § 523(a)(8) has been eliminated by the HEAL notes and all relevant case law. Perhaps more to the point, the plaintiff's argument ignores the plain language of § 292f(g).

It is a fundamental canon of statutory analysis that "interpretation begins with the language of the statute itself." *Pennsylvania Public Welfare Dept. v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990). Further, "as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). It is clear that if a disjunctive interpretation had been intended by Congress, § 292f(g) would have been drafted in the alternative as was § 523(a)(8). *See Erlenbaugh v. United States,* 409 U.S. 239, 244, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972) ("[W]henever Congress passes a new statute, it acts aware of all previous statutes on the same subject").

■ Other courts have also reached the conclusion that all three requirements of § 292f(g) must be satisfied for a determination that a HEAL loan should be discharged. *See, e.g., United States v. Wood, supra,* 925 F.2d at 1582 ("All three of the conditions [of § 294f(g) ] must be satisfied in order for the HEAL loan to be discharged"); *Nelson v. Pennsylvania Higher Education Assistance Agency (In re Nelson),* 183 B.R. 972, 976 (Bankr.S.D.Fla.1995) ("In seeking to discharge a HEAL loan, a debtor must meet all three requirements under 42 U.S.C. § 294f(g)").

Finally, the plaintiff requests a "repayment moratorium as is necessary to protect the minimal living standard of the [plaintiff]" under § 105, if the court concludes that the subject debts are nondischargeable. *Plaintiff's Memorandum of Law* at 9. This request was not raised before or during the trial, and there is no evidentiary predicate for its consideration. Moreover, in light of the finding that the plaintiff is currently able to maintain a minimal standard of living, *see supra* at 7, the request is denied.

### ORDER

Accordingly,

IT IS ORDERED that the nonHEAL debts in the principal amount of $54,225.69 are nondischargeable under § 523(a)(8)(B); and

IT IS FURTHER ORDERED that the HEAL debt in the principal amount of $112,-313.95 is nondischargeable under § 292f(g).