**UNITED STATES of America,
Plaintiff,**

v.

**Gary W. RUSHING, Defendant.**

**No. CIV.A. 01–5013 (MLC).**

United States District Court,
D. New Jersey.

Dec. 20, 2002.

---

Christopher J. Christie, United States Attorney (Susan J. Steele of counsel), Newark, NJ, for Plaintiff.

Gary W. Rushing, Morganville, NJ, pro se.

## MEMORANDUM OPINION

COOPER, District Judge.

This is an action to recover money owed on Health Education Assistance Loans ("HEALs"). A private lender granted the HEALs from 1984 through 1986 to the *pro se* defendant, Gary W. Rushing, when he was enrolled in a chiropractic school. Rushing received bankruptcy protection in 1995. The plaintiff ("the government") moves for summary judgment on the com-

plaint, arguing that (1) Rushing's HEAL debt was not discharged in bankruptcy because he did not request a Bankruptcy Court to find that its nondischarge would be unconscionable; and, (2) the sum sought, which is in excess of the sum borrowed originally, is the result of compounded interest. *See* Fed.R.Civ.P. 56. The Court will grant the motion for the following reasons.

### BACKGROUND: HEAL PROGRAM; RUSHING'S HEALs, DEFAULT, AND BANKRUPTCY; and, PROCEDURAL HISTORY

#### I. HEAL Program

Private lenders may grant federally-guaranteed loans to "a student enrolled in a school of ... chiropractic" under the HEAL program. 42 U.S.C. § 292b(a). A Bankruptcy Court may discharge a HEAL debt if certain requirements are met. In 1984, those requirements were:

A debt which is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under title 11 only if such discharge is granted—

(1) after the expiration of the 5–year period beginning on the first date ... when repayment of such loan is required;

(2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and

(3) upon the condition that the Secretary [of Health & Human Services] shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.[1]

42 U.S.C. former § 294f(g).

This section was amended in 1988, recodified as 42 U.S.C. § 292f(g) in 1992, and

---

1. Subsection 294f(f), which was in effect in 1984, stated: "The Secretary may, after no-

then amended again in 1993 and 1998. *See* 42 U.S.C. § 292f (2002) (historical & statutory notes at 345–46); 42 U.S.C. former § 294f (1991) (historical & statutory notes at 542). With the exception of the 1993 amendment to 42 U.S.C. § 292f(g)(1), which changed the expiration period to seven years, the current version of the statute is substantially similar to the version that was in effect in 1984. It now states:

> *Notwithstanding any other provision of Federal or State law,* a debt *that* is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under *any chapter of* Title 11, only if such discharge is granted—
>
> (1) after the expiration of the *seven-year* period beginning on the first date when repayment of such loan is required, *exclusive of any period after such date in which the obligation to pay installments on the loan is suspended;*
>
> (2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and
>
> (3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.[2]

42 U.S.C. § 292f(g) (amendments italicized). Subsection 294f(g)(2), which was in effect in 1984, and subsection 292f(g)(2), which is in effect now, are the same: they both require a finding that nondischarge would be unconscionable.[3]

## II. *Rushing's HEALs, Default, and Bankruptcy*

Rushing, as a student enrolled in a chiropractic school, was granted HEALs in the sums of $4,176 in April 1984, $12,500 in September 1984, $12,500 in 1985, and $3,800 in 1986. (Compl., Ex. A, 10–9–01 Indebtedness Certificate ("Indebt.Certif.").) Rushing, pursuant to the promissory notes that he signed, agreed to repay the HEALs at a variable interest rate after ceasing to be a full-time student or completing a residency program. (Pl.'s Answer to Mot., Ex. A, Promissory Notes dated 4–84, 9–84, 7–85, & 4–86 ("Prom. Notes").) In addition, each note states that the terms were to "be construed according to the Law (42 U.S.C. 294 et seq.) and the Federal regulation (42 CFR Part 60) governing the administration of the [HEAL] Program, copies of which are on file with the holder of this Note." (*Id.* (as stated therein).)[4]

The Student Loan Marketing Association [SLMA] then purchased the promissory notes and received an assignment. (Indebt.Certif.) Subsequently, according to the Certificate of Indebtedness sent to Rushing by the Department of Health & Human Services ("HHS") in October 2001:

---

tice and opportunity for a hearing, cause to be reduced Federal reimbursements or payments for health services under any Federal law to borrowers who are practicing their professions and have defaulted on their loans insured under this subpart in amounts up to the remaining balance of such loans." 42 U.S.C. former § 294f(f).

**2.** Subsection (f) now states that the Secretary "shall" reduce reimbursements, rather than "may." 42 U.S.C. § 292f(f).

**3.** The Court will refer only to " § 292f(g)" or "subsection 292f(g)(2)" for ease of reference hereinafter.

**4.** The language of subsection 292f(g)(2) was codified formerly within 42 U.S.C. §§ 294–294l, discussed *supra.* The cited regulation—although still discussing a five-year expiration period—reiterates the condition that a Bankruptcy Court find nondischarge to be unconscionable. 42 C.F.R. § 60.8(b)(5). The 1984 version of the regulation also has that condition. *See, e.g.,* 42 C.F.R. former § 60.8(b)(5).

Upon your leaving [school], you were furnished a repayment schedule by the Student Loan Servicing Center with notification that payments were to begin May 1, 1987. You were then granted several Forbearance Agreements for the period of April 1, 1987, to September 30, 1987, and from March 1, 1989, to August 31, 1991, with payments to begin thereafter. Between September 6, 1988, and February 24, 1992, you made 12 payments totaling $3,707.89.

On June 17, 1993, the SLMA sent you a final demand letter to remit payment in full or your account would be filed as a default claim. You did not make any payments, nor did you respond.

Due to your failure to continue making payments, the SLMA filed an insurance claim on July 2, 1993, with the [HHS]. The claim in the amount of $63,771 was paid on September 24, 1993, and an assignment of the notes was received.

By letter dated September 29, 1993, you were notified that the previous holder of your ... [HEALs] placed you in default and assigned your notes to the ... Government. You were informed that your student loans were consolidated using the lowest interest rate allowable by law. Enclosed were instructions for entering into a Repayment Agreement (RA) with notice that it must be completed and returned within 30 days. You did not respond.

In a letter dated October 5, 1993, you were notified that the principal amount of your debt wold be referred to the IRS for offset of any tax refund to which you might be entitled unless payment in full was received.

A payment in the amount of $54.30 was credited to your account on December 13, 1993, as the result of a SLMA refund.

In a letter dated October 7, 1994, you were notified that the principal amount of your debt would be referred to the IRS for offset of any tax refund to which you might be entitled unless payment in full was received. You did not make any payments, nor did you respond.

On May 11, 1995, in the United States Bankruptcy Court, District of New Jersey, you filed a petition for relief under Title 11 U.S.C. Chapter 7.... [H]owever, your HEAL debt was not dischargeable under bankruptcy.

On June 8, 1995, you were notified that you had 60 days in which to resolve your delinquent debt. You were advised that if you were unwilling to establish an RA, your case would be immediately referred to the Office of the Inspector General (OIG) for exclusion from participation in the Medicare/Medicaid Programs. The letter also informed you that in the event you did not enter into an RA, your debt would be referred to the ... Department of Justice (DOJ) for enforced collection. You did not comply.

A payment in the amount of $656.21 was applied to your account on June 9, 1995, as the result of an IRS offset.

(Indebt.Certif.)

Rushing sought bankruptcy protection in 1995. (Pl.'s Br. at 2.) The Bankruptcy Court, District of New Jersey, issued a general discharge of debts in August 1995 ("1995 Order"), but made no mention of the HEALs. (Pl.'s Answer to Mot., Ex. A, 8–95 Bankr.Ct. Order.) Thereafter, according to the Certificate of Indebtedness:

In a letter dated April 11, 2000, you were notified that although payments on your HEAL debt had been suspended during your bankruptcy proceedings, your debt was not subject to cancellation by bankruptcy discharge. You were provided instructions for entering into an RA with notice that it must be com-

pleted and returned within 30 days along with a good faith payment. You did not comply.

By letter dated July 3, 2000, you were notified that your account had been referred to OSI Collection Services for collection. You were advised that your account would be referred to the DOJ if you failed to either remit payment in full or enter into an RA. You did not make any payments, nor did you respond.

In a letter dated September 21, 2000, you were notified of [HHS's] intent to refer your HEAL debt to other Federal agencies for the purpose of administrative offset under the Debt Collection Improvement Act of 1996. You were advised that a written response, an RA, or payment in full received within 60 days from the date of the letter would terminate administrative offset action. You did not respond.

On May 1, 2001, you were notified that you had 60 days in which to resolve your delinquent debt. You were advised that if you were unwilling to establish an RA, your case would be immediately referred to the OIG for exclusion from participation in the Medicare/Medicaid Programs and your debt would be referred to the ... DOJ for enforced collection. You remained unresponsive.

To date, a total amount of $4,418.84 has been credited to your account.

... [T]he federal government is exercising its option and declaring your note due and payable. Accordingly, your debt has now been referred to the [DOJ] for enforced collection.

(Indebt.Certif.)

HHS advised Rushing in the Certificate of Indebtedness that he owed $118,272.33 in principal—including compounded interest—and $423.35 in further interest as of September 15, 2001. (*Id.;* Gov't Reply at 1.) It also advised that interest continued to accrue at a rate of 6.875% per year. (*Id.*)

### III. *Procedural History*

The government commenced this action in October 2001 to recoup $118,272.33 in principal, $423.35 in interest accrued through September 16, 2001, and interest from that date onward at a rate of 6.875% per year. (Compl.) [5] Rushing asserted in his answer in December 2001 that he had responded to inquiries concerning the HEALs. (Answer.) He also stated:

I also disagree ... that the [HEALs were] not discharged under bankruptcy. I have a signed Order from a United States Bankruptcy Judge stating just the opposite. I have never signed any document or instrument whereby I waived or relinquished my right to discharge the [HEALs] in Bankruptcy.... Correct your records to reflect the order of the court....

(*Id.*)

The government moves for summary judgment on the complaint. (Not. of Mot. dated 5–6–02.) On the issue of dischargeability, the government argues that it was not required to object or appear in the bankruptcy proceedings to preserve Rushing's obligation to repay the HEALs. Also, the government argues that Rushing's HEAL debt was not discharged pursuant to § 292f(g), as he failed to seek the required determination that nondischarge would be unconscionable. (Gov't Br. at 6–7.) Furthermore, the government argues that Rushing owes $118,272.33 because interest has accrued over the years due to

---

**5.** The Certificate of Indebtedness seeks $423.35 in interest "as of September *15,*" whereas the complaint seeks that amount "ac-

crued through September *16.*" (Indebt. Certif.; Compl.) The Court will follow the date alleged in the complaint.

his failure to make payments. It also points out that interest accrued during the pendency of the bankruptcy proceedings despite the automatic bankruptcy stay. (*Id.* at 5, 7.)

Rushing, as to the dischargeability issue, argues that his HEALs were contracts of adhesion (Pl.'s Br. at 1); that "when a dispute arises over terms ... the courts usually interpret them in the way most favorable to the consumer" (*id.*); that "[u]pon signing the original contracts ... [he] understood that should tragedy strike, the student loans would be bankruptable" (*id.*); that the terms of each of the promissory notes could not be altered without his consent (*id.*); that he was "preclude[d] ... from discharging this loan in bankruptcy until after the first five years of the repayment period, [and he] has met this five year period" (*id.*); that "[t]here are no other terms pertaining to bankruptcy" (*id.*); and, that the government is "alluding to [terms that] are not spelled out in writing in this contract." (*Id.* at 2.) As to the issue of the debt amount, Rushing argues that the sum owed is $32,976; and, that "[a] pervasive problem in student loans is the state of the lender's records: the loan has been transferred several times and it is not clear just what is owed and whether all the additional charges are in accordance with law." (*Id.*)

## DISCUSSION: SUMMARY JUDGMENT STANDARD; DISCHARGE; and, MONEY OWED

### I. Summary Judgment Standard

A court may grant a motion for summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The summary judgment movant bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met that initial burden, the non-movant must present evidence establishing that a genuine issue of material fact exists, making it necessary to resolve the difference at trial. *Id.* at 324, 106 S.Ct. 2548; *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir.1985). The non-movant, rather than rely on mere allegations, must present actual evidence that raises a genuine issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge's role at the summary judgment stage is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original). A fact is material only if it might affect the outcome of the action under governing law. *Id.* at 248, 106 S.Ct. 2505; *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## II. *Discharge: The Law; and, Branch of Motion that is for Summary Judgment on Complaint as to Liability*

### A. *The Law*

■■■■ A HEAL debt is not discharged as a matter of course upon the resolution of a bankruptcy proceeding commenced pursuant to chapter 7 of title 11 of the Bankruptcy Code ("Chapter 7 proceeding") [6], even if the debtor was motivated by HEAL indebtedness. *In re Rice,* 78 F.3d 1144, 1147 n. 3 & 1151 (6th Cir.1996). The discharge of a HEAL debt is controlled by § 292f(g), not the general provisions of the Bankruptcy Code. *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991) (affirming grant of judgment on pleadings to government in HEAL-debt-recoupment action; rejecting claim that HEAL debt resolved by general bankruptcy discharge); *In re Hines,* 63 B.R. 731, 735 (Bankr.D.S.D.1986) (holding as to HEAL debt, § 292f(g) "is paramount for determining dischargeability in Chapter 7 matters").[7] Thus, the issuance of a general bankruptcy discharge to the debtor is insufficient; the Bankruptcy Court must make special findings as to the HEAL debt. *Wood,* 925 F.2d at 1581.

■■■■ It is the debtor's burden to file an adversary complaint or commence an adversary proceeding pursuant to § 292f(g) in Bankruptcy Court, and to name the government therein, for the discharge of a HEAL debt. *United States v. Erkard,* 200 B.R. 152, 153–54 (N.D.Ohio 1996) (granting government summary judgment in HEAL-debt-recoupment action, even though discharge entered in Chapter 7 proceeding); *In re Malloy,* 155 B.R. 940, 942 (E.D.Va.1993), *aff'd,* 23 F.3d 402 (4th Cir.1994) (table decision). The government does not waive the nondischargeability of a HEAL debt if it does not appear in a bankruptcy proceeding, even if it is aware of the proceeding, unless the debtor files an adversary complaint pursuant to § 292f(g). *United States v. Putzi,* 91 B.R. 42, 43–44 (S.D.Ohio 1988) (granting summary judgment to government, which brought action after discharge entered in Chapter 7 proceeding); *see Wood,* 925 F.2d at 1581–83 (affirming grant of judgment on pleadings to government, even though it did not object to bankruptcy petition). Section 292f(g) "is self-executing and . . . the burden is on the debtor to request a determination of dischargeability of a HEAL loan." *Id.* at 1583.[8]

■ The Bankruptcy Court must also make a specific finding that nondischarge of a HEAL debt would be unconscionable pursuant to subsection 292f(g)(2). Where there is no finding of unconscionability, the HEAL debt is not discharged. *United States v. Degerness,* No. 91–A–806, 1992 WL 295952, at *2 (D.Colo. Sept.14, 1992) (granting government summary judgment; HEAL-debt-recoupment action filed after discharge entered in Chapter 7 proceeding); *see In re Johnson,* 787 F.2d 1179, 1181 (7th Cir.1986) (stating HEAL "only may be discharged if the bankruptcy court

---

6. *See* 11 U.S.C. § 701 *et seq.*

7. *See United States v. Johnson,* 16 F.3d 1222 (6th Cir.1994) (table decision; text at No. 93–1961, 1994 WL 13851) (affirming grant of summary judgment to government in HEAL debt action).

8. There are cases detailing the procedure for filing an adversary complaint after the commencement of a Chapter 7 proceeding. *See, e.g., In re Greco,* 251 B.R. 670, 673 (Bankr. E.D.Pa.2000); *In re Steuber,* 200 B.R. 31, 32 (Bankr.W.D.Mo.1996).

finds that nondischarge would be unconscionable and the ... HHS has not waived certain rights"); *In re Malloy,* 155 B.R. at 947 (stating, in bankruptcy proceeding, debtor has burden to show unconscionability).

### B. *Branch of Motion that is for Summary Judgment on Complaint as to Liability*

■ The government has met its initial burden of showing that there is no genuine issue of material fact as to Rushing's liability for the HEAL debt. The Bankruptcy Court, in granting Rushing's petition in the Chapter 7 proceeding, neither noted the HEAL debt nor addressed the issue of unconscionability pursuant to subsection 292f(g)(2). (1995 Order.) Furthermore, there is no evidence in the record that Rushing either filed an adversary complaint as to the HEALs or requested the Bankruptcy Court to address the unconscionability issue as required. *Wood,* 925 F.2d at 1581–83. The government also correctly argues that it was not required to object to Rushing's petition in the Chapter 7 proceeding to preserve the opportunity to recoup the HEAL debt. *Putzi,* 91 B.R. at 43–44. Therefore, it has made a prima facie showing that Rushing is still obligated to repay his HEAL debt.

Rushing, in opposition, argues that he has met the expiration-period requirement for a discharge. He does not, however, address his failure to either commence an adversary proceeding on his HEAL debt or request the Bankruptcy Court to address the issue of unconscionability. Section 292f(g) is not read in the disjunctive, *i.e.,* either after a period of years *or* on an unconscionability finding, but rather in the conjunctive, *i.e.,* after a period of years *and* on an unconscionability finding. 42 U.S.C. §§ 292f(g)(1) & (2); *Borrero v. Conn. Student Loan Found.,* No. 3:97–

1382, 1997 WL 695515, at *3 (D.Conn. Oct.21, 1997). Rushing, thus, has failed to rebut the government's prima facie showing in support of its motion as to this issue.

Rushing's argument that the government has altered the HEAL terms is disingenuous. The promissory notes for all four HEALs state that their terms are to be construed according to 42 U.S.C. § 294—now 42 U.S.C. § 292f(g)—which requires an explicit finding by the Bankruptcy Court that nondischarge of the HEALs would be unconscionable. This language contained in each of Rushing's promissory notes is not unusual. *See, e.g., In re Feuer,* 195 B.R. 866, 867 (Bankr. E.D.Pa.1996) (quoting similar language from HEAL promissory note therein).

Rushing fails to establish that a genuine issue of material fact exists on the issue of his liability for the HEAL debt. Viewing the evidence in the light most favorable to Rushing, the Court finds that his HEAL debt has not been discharged and that the government's attempts to recover the money owed were proper. *See In re Rice,* 78 F.3d at 1147 (detailing government's effort to recoup HEAL debt after debtor granted discharge in Chapter 7 proceeding). The Court grants the branch of the government's motion that is for summary judgment on the complaint as to Rushing's liability for the outstanding HEAL debt.

### III. *Money Owed*

■ The government has met its initial burden of showing that there is no genuine issue of material fact as to the sum owed by Rushing on the HEAL debt. The Certificate of Indebtedness demonstrates in stark detail how an initial principal sum of $32,976 grew to exceed $118,000. Interest on the HEALs has been accruing for over a decade, and only approximately $4400 has been contributed toward the debt through payments, one refund, and one

offset. (Indebt.Certif.) Furthermore, interest properly accrued during the pendency of Rushing's bankruptcy proceeding. *See Leeper v. Pa. Higher Educ. Assistance Agency*, 49 F.3d 98, 104 (3d Cir.1995) (holding interest accrues on nondischargeable student loan after filing of bankruptcy petition).

 Rushing's arguments in opposition—that he owes only the original principal sum, and that the sum now sought is improper because of problems caused by the transfer of the HEALs among lenders and faulty interest charges—are mere allegations that are "not significantly probative." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Thus, Rushing fails to establish a genuine issue of material fact as to the sum he owes on the HEALs. Viewing the evidence in the light most favorable to Rushing, the Court finds that the government is entitled to judgment in the sum of $118,272.33 in principal, the sum of $423.35 in interest accrued through September 16, 2001, and for interest from that date onward at a rate of 6.875% per year. The branch of the government's motion that is for summary judgment on the complaint as to the sum owed by Rushing on his HEAL debt is granted.

### CONCLUSION

Rushing has failed to raise a genuine issue of material fact in opposition to the government's prima facie showing of entitlement to summary judgment. Therefore, the Court will grant the government's motion for summary judgment on the complaint.

An appropriate order accompanies this memorandum opinion. However, the government is directed to provide the Court, by letter, a calculated interest figure as of the date of that letter, whereupon an appropriate judgment will be entered.