

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-10-2006

# In Re: Nathan Udell

Precedential or Non-Precedential: Precedential

Docket No. 05-2950

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: Nathan Udell " (2006). *2006 Decisions.* Paper 666.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/666

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2950

———

IN RE: NATHAN JAMES UDELL,

Debtor

NATHAN JAMES UDELL,

Appellant

v.

UNITED STATES OF AMERICA

FREDERIC J. BAKER, ESQUIRE,

Trustee

GLORIA M. SATRIALE, ESQUIRE,

Trustee

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cv-00356)
District Judge:  Honorable Harvey Bartle, III

—————

Argued June 13, 2006
Before:  FISHER, ALDISERT and LOURIE,[*] Circuit Judges.

(Filed July 10, 2006)

Megan M. McDonald (Argued)
656 Main Street
Hellertown, PA  18055
          Attorney for Appellant

Virginia R. Powel
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106

Tara Leigh Grove (Argued)
United States Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W., Room 7230
Washington, DC  20530
          Attorneys for Appellee

—————————————

[*]The Honorable Alan D. Lourie, United States Circuit
Judge for the Federal Circuit, sitting by designation.

OPINION OF THE COURT

LOURIE, Circuit Judge.

Nathan James Udell appeals from the decision of the United States District Court for the Eastern District of Pennsylvania, reversing the order of the United States Bankruptcy Court, Eastern District of Pennsylvania, and holding that Udell's educational debt was not dischargeable. Udell v. United States, 325 B.R. 147 (E.D. Pa. 2005). Because the District Court correctly determined that the Bankruptcy Code, viz., 11 U.S.C. § 523(a)(8), applies to Udell's debt and prohibits the discharge of his debt, we will affirm.

## I. BACKGROUND

The underlying facts are not in dispute. Udell entered the United States Air Force Academy as a cadet by Congressional appointment on July 1, 1993. He completed three academic years at the Air Force Academy from July 1, 1993, to August 2, 1996. Upon enrollment at the Air Force Academy, Udell signed a "Record of Acceptance, Obligation, Reimbursement, and Oath of Allegiance," agreeing to complete the educational requirements and to serve on active duty for a period of eight years. He further agreed that if he failed to complete the educational requirements or to serve on active duty for the requisite period of time, he would be required to reimburse the government for the cost of his education.

3

While enrolled at the Air Force Academy, Udell possessed an official government issued credit card. When questioned by investigators about a delinquent balance on that card, Udell initially claimed that the card was stolen, but later admitted that he had not been truthful about the card being stolen. He also admitted that he had given the card to his girlfriend to "use for whatever she needed," and that she had made various purchases with that card. On April 24, 1996, the Military Review Committee convened and recommended Udell for disenrollment due to his misconduct. Udell was permitted to submit a letter of resignation in lieu of disenrollment. On July 31, 1996, Udell's letter of resignation was accepted and Udell was also discharged (under honorable conditions) from the Air Force.

As a result of his early discharge from the Air Force, Udell was required to reimburse the government for the cost of his education in the amount of $88,936. Including interest and administrative charges, the amount has increased to a total of $123,692. Udell does not dispute that he owes this amount. In June 2002, Udell filed a voluntary petition for bankruptcy protection under Chapter 7 of the U.S. Bankruptcy Code, stating that he owed $123,692 to the United States Department of Defense. In October 2002, Udell instituted an adversary proceeding in the Bankruptcy Court, seeking a determination that the debt for his Air Force Academy education was dischargeable.

The Bankruptcy Court determined that Udell's debt was dischargeable. In re Udell, 318 B.R. 293 (Bankr. E.D. Pa. 2004). The court recognized that both the Armed Forces Code,

4

viz., 10 U.S.C. § 2005(d), and the Bankruptcy Code, viz., 11 U.S.C. § 523(a)(8), "deal with the dischargeability of educational obligations or loans." Id. at 296. The court, however, determined that 10 U.S.C. § 2005(d) is a more specific statute "targeted only to educational obligations arising in connection with service in the armed forces" and that, as a specific statute, § 2005(d) controls whether Udell's debt to the government is dischargeable. Id. The court found legal support for its conclusion in case law holding that a more specific statute governs the dischargeability of specific types of educational loans, in those cases Health Education Assistance Loans ("HEAL"). Id. The court also found factual support for its decision in the "Record of Acceptance, Obligation, Reimbursement, and Oath of Allegiance," which specifically references and summarizes § 2005(d). Id. Without expressly considering the language of § 2005(d), the court concluded that Udell's obligation to the government was dischargeable under § 2005(d). Id. at 297.

The District Court reversed the decision of the Bankruptcy Court, concluding that Udell's debt was not dischargeable. Udell, 325 B.R. at 151. The court noted that Udell's type of debt was encompassed within both the Armed Forces Code, § 2005(d), and the Bankruptcy Code, § 523(a)(8). Upon considering the plain language of § 2005(d) and § 523(a)(8), the court determined that § 2005(d) prohibits the discharge of a debt within a period of five years after a debtor has ended service in the armed forces, but "is silent with respect to what happens thereafter." The court concluded that § 523(a)(8), in contrast, prohibits the discharge of a debt at all times absent a showing of undue hardship. Id. at 150.

5

According to the court, "[t]he two statutes can easily be reconciled so as to give effect to both" because "§ 2005(d) absolutely prohibits the discharge of the debt in question during the first five years, and § 523(a)(8) prohibits a discharge thereafter unless an undue hardship exists." Id. Because five years had passed since Udell had been discharged and Udell had not argued undue hardship, the court determined that his debt was not dischargeable. Id. The court noted that its interpretation of the statutes was "neither an unfair nor unreasonable harmonization of the two statutes," and that it was not Congress's intent to treat the debt of one who leaves the military more leniently than the debt of others. Id.

Udell timely appealed from the District Court's decision, and we have jurisdiction to hear this appeal under 28 U.S.C. § 158(d) and 28 U.S.C. § 1291.

## II. DISCUSSION

We review a district court's bankruptcy decision using the same standard as that exercised by the district court. In re Woskob, 305 F.3d 177, 181 (3d Cir. 2002). Accordingly, we review factual findings for clear error, and we exercise plenary review over legal determinations. Id.

On appeal, we are asked to decide whether the Armed Forced Code authorizes the discharge of an educational obligation arising in connection with service in the armed forces, after five years have elapsed since a debtor's active service in the armed forces has ended, without a showing of undue hardship as required under the Bankruptcy Code. After

6

careful review of the submitted briefs and the oral argument, we hold that the Armed Forces Code does not authorize a discharge absent a showing of undue hardship. The two statutes at issue are 10 U.S.C. § 2005(d) and 11 U.S.C. § 523(a)(8). The Armed Forces Code, viz., 10 U.S.C. §§ 2005 (a) and (d), provide, in relevant part, that:

> (a) The Secretary concerned may require, as a condition to the Secretary providing advanced education assistance to any person, that such person enter into a written agreement with the Secretary concerned under the terms of which such person shall agree–

>> (1) to complete the educational requirements specified in the agreement and to serve on active duty for a period specified in the agreement;

>> (2) that if such person fails to complete the education requirements specified in the agreement, such person will serve on active duty for a period specified in the agreement;

>> (3) that if such person, voluntarily or because of misconduct, fails to complete the period of active duty specified in the agreement, or fails

7

to fulfill any term or condition prescribed pursuant to clause (4), such person will reimburse the United States in an amount that bears the same ratio to the total cost of advanced education provided such person as the unserved portion of active duty bears to the total period of active duty such person agreed to serve;

(4) to such other terms and conditions as the Secretary concerned may prescribe to protect the interest of the United States.

. . .

(d) <u>a discharge in bankruptcy under title 11 shall not release a person from an obligation to reimburse the United States</u> required under the terms of an agreement described in subsection (a) <u>if the final decree of the discharge in bankruptcy was issued within a period of five years after the last day of a period which such person had agreed to serve on active duty</u>. . . .

(Emphases added). The Bankruptcy Code, <u>viz.</u>, 11 U.S.C. § 523(a)(8), provides, in relevant part, that:

8

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

. . .

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a government unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

On appeal, Udell argues that his debt is dischargeable under § 2005(d). To support his argument, Udell points to the "Record of Acceptance, Obligation, Reimbursement, and Oath of Allegiance," which he alleges references § 2005(d) when setting forth the conditions and obligations of Udell's enrollment in the Air Force. In addition, Udell argues that the plain language of § 2005(d) authorizes the discharge of his debt. According to Udell, § 2005(d) prohibits him from discharging his debt for the first five years after he has ended his service on active duty, but thereafter releases him from his obligation to

9

reimburse the United States. Udell further asserts that § 2005(d) is a specific provision relating to the discharge of an educational obligation arising from assistance by the armed forces, which controls over § 523(a)(8), a provision relating to government student loans in general. Udell contends that such cases as In re Borrero, 208 B.R. 792 (Bankr. D. Conn. 1997), United States v. Wood, 925 F.2d 1580 (7th Cir. 1991), and United States v. Rushing, 287 B.R. 343 (D.N.J. 2002), are analogous, purportedly holding that a specific statute governing the discharge of a Health Education Assistance Loan ("HEAL") controls over § 523(a)(8). Finally, Udell asserts that the legislative history of § 523(a)(8) clearly establishes that when Congress amended § 523(a)(8), it intended that that section not affect debts from other programs under more specific statutes.

The government responds that the District Court correctly determined that § 2005(d) and § 523(a)(8) can be harmonized and that they are applicable to somewhat different situations. According to the government, because Udell did not assert that repaying his debt would constitute an undue hardship, his debt cannot be discharged. The government notes that the statutory provisions are not in conflict and work in conjunction with each other to ensure that individuals receiving financial assistance from the government repay their debts to the government. In addition, the government asserts that the cases that Udell relies upon for support that a specific statutory provision controls over a general provision are distinguishable from this case because they involve a different statutory provision.

We agree with the government that the District Court correctly determined that Udell's debt was not dischargeable

10

absent a showing of undue hardship. It is a well established canon of statutory construction that "provisions in different statutes should, if possible, be interpreted so as to effectuate both provisions." Cutaiar v. Marshall, 590 F.2d 523, 530 (3d Cir. 1979); see also United States v. Bruno, 897 F.2d 691, 695 (3d Cir. 1990) ("it is our duty to construe the statutes in such a way as to give effect to both, if possible"); Tineo v. Ashcroft, 350 F.3d 382, 391 (3d Cir. 2003) ("Whenever possible, the two statutes should be read in order to give effect to both."); United States v. Borden Co., 308 U.S. 188 (1939) ("When there are two acts upon the same subject, the rule is to give effect to both if possible."); Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1018 (1984). With that principle in mind, we begin by considering the plain language of both § 2005(d) and § 523(a)(8) to determine if these provisions can be harmonized and to determine whether Udell's debt can be discharged. Our inquiry here begins and ends with the plain language of § 2005(d) and § 523(a)(8) because the statutes are not in conflict and can be readily reconciled such that we can give effect to each provision.

With regard to § 2005(d), the relevant phrase is "a discharge in bankruptcy under Title 11 shall not release a person from an obligation to reimburse the United States . . . if the final decree of the discharge in bankruptcy was issued within a period of five years after the last day of a period which such person had agreed to serve on active duty." 10 U.S.C. § 2005(d) (emphasis added). It is undisputed that Udell's debt resulting from his education at the Air Force falls within the type of debt encompassed within § 2005(d). It is also undisputed that it has been more than five years since Udell's last day in which he served on active duty. The dispute concerns whether the

11

language in § 2005(d) authorizes the discharge of the debt at issue after that five year period had elapsed. The language in § 2005(d) clearly prohibits an individual with an educational debt from discharging his debt under any circumstance during the first five years after he ends his service on active duty in the armed forces, but does not, however, address what happens thereafter. Udell argues that the plain language of § 2005(d) authorizes the discharge of a debt after the five year period has elapsed. Essentially, Udell is contending that the term "shall not release" means that, other than during that five year period, the statute "shall" provide for the release of the debt.

We do not agree. We see no language in § 2005(d) that suggests or authorizes what happens after that five year period. The statutory language "shall not" does not mean that the debt "shall be released unless." The statute only speaks in the negative, prohibiting, not permitting, the discharge of a debt during a five year period. That cannot be interpreted to mean that the statute implicitly speaks in the positive after that five year period and permits the discharge of the debt. Accordingly, § 2005(d), by its plain language, does not authorize the discharge of Udell's debt. Moreover, while the "Record of Acceptance, Obligation, Reimbursement, and Oath of Allegiance" references § 2005, it does not provide or even suggest that Udell's debt is dischargeable under that provision.

In contrast, the plain language of § 523(a)(8) does not place any time restrictions on when a debt cannot be discharged. Rather, that provision prohibits the discharge of an educational debt at any time unless the debtor can demonstrate undue hardship. Moreover, the plain language of § 523(a)(8) clearly

12

encompasses Udell's type of debt. That provision applies to debts for "an educational benefit . . . made under any program funded in whole or in part by a governmental unit . . . or . . . an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor . . . ." 11 U.S.C. § 523(a)(8). Because Udell's debt is plainly an educational benefit made under a program funded by the government and Udell has an obligation to repay funds received as an educational benefit, his debt falls within § 523(a)(8). Udell's debt is also not dischargeable under the plain language of § 523(a)(8), which provides that such a debt cannot be discharged "unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor." Because Udell has not alleged undue hardship, he cannot discharge his debt under § 523(a)(8) on that ground. Thus, § 523(a)(8) and § 2005(d) can be readily harmonized such that we can give effect to both provisions. While § 2005(d) prohibits a cadet from discharging his debt for any reason for the first five years after he leaves the military, § 523(a)(8) applies thereafter, prohibiting the discharge of a debt unless undue hardship can be demonstrated.

Udell argues that the two statutes are in conflict, and that § 2005(d), a more specific statute, controls the more general statute, § 523(a)(8). We find Udell's argument unpersuasive. While it is true that a more specific provision governs over a more general statute when there is a conflict between the two statutes, here there is no conflict. See Nat'l Cable & Telecomms. Ass'n, Inc. v. Gulf Power Co., 534 U.S. 327, 336 (2002). As stated in Nat'l Cable, the specific statutory language

13

controls "but only within its self-described scope." Id. Although the scope of § 2005(d) and § 523(a)(8) may overlap during the first five years after a cadet leaves the military, there is no overlap thereafter. Thus, the principle of statutory construction that Udell urges this Court to adopt is not applicable to this case. As this is not a situation in which one statutory provision conflicts with another, we have therefore considered how each provision may apply to Udell's debt. Because it has been more than five years since Udell has served on active duty, § 2005(d) does not pertain to Udell's debt, and § 523(a)(8) applies, prohibiting the discharge of his debt.

Udell further attempts to rely on cases such as Borrero, Wood, and Rushing, for support of his argument that a statute addressing the dischargeability of a specific type of debt controls over the more general statute. Those cases are not analogous to this case because they involve a different statutory provision with language significantly different from the language in § 2005(d). For example, Borrero involves the dischargeability of debt arising under HEAL, a loan program governed by the Public Health Service Act, 42 U.S.C. § 292f(g). 208 B.R. at 797. Section 292f(g) absolutely prohibits the discharge of debt for seven years, and thereafter permits discharge only if it would be "unconscionable" to require repayment. See id. at 795 n.4; 42 U.S.C. § 292f(g). As the court noted in Borrero, a showing of "unconscionability" is a more burdensome standard than the "undue hardship" standard in § 523(a)(8). 208 B.R. at 798. In such a case when there are different standards required in the statutory provisions, it may be appropriate to apply the canon of statutory interpretation that a more specific provision controls. However, in this case, there

14

is no conflict between § 2005(d) and § 523(a)(8), because there are not two different standards. Thus, the analogy of the HEAL program involving a specific type of debt governed by a specific statute is inapplicable to this case involving the Armed Forces Code.

Udell also asserts that the legislative history demonstrates that when Congress amended § 523(a)(8), it clearly intended that § 523(a)(8) not affect debts from other programs under more specific statutes. However, the plain language of a statute is normally regarded as conclusive unless there is a "clearly expressed legislative intention to the contrary." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 107 (1980); see also United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240-41 (1989) ("as long as the statutory scheme is coherent and consistent, there is generally no need for a court to inquire beyond the plain language of the statute"). Thus, the legislative history would be pertinent only to the extent that Congress clearly expressed an intent to interpret § 2005(d) or § 523(a)(8) contrary to the plain language of the statutes. We do not find that Congress expressed such an intent. In fact, the legislative history reveals that Congress, in enacting § 2005, sought to enable the Department of Defense to "deal more effectively with the problem of receiving a fair return on the cost of education received by the person who fails to complete his course of education or his active duty obligation." S. REP. NO. 96-850, at 9 (1980), as reprinted in 1980 U.S.C.C.A.N. 2833, 2841. Congress therefore did not intend that § 2005(d) serve as a means by which a cadet could avoid paying his debt. Rather, Congress intended that under § 2005(d), the government would be ensured of being repaid a debt owed by a cadet. Id. Thus,

15

the interpretation that Udell urges this Court to adopt is unsupported by the legislative history as well as the statutory language.

Udell finally points to a part of the legislative history of § 523, stating that § 523(a)(8) should not govern those debts administered under more "program-specific dischargeability provisions" in which case the specific provisions apply, and lists the Public Health Service Act, § 292f(g), as an example of such a case. 136 CONG. REC. H13289 (Oct. 27, 1990). Because § 292f(g) involves different language from § 2005(d), the example that Congress provided to indicate when a specific provision may control over § 523(a)(8) does not mean that § 2005(d) is an example of a program-specific provision. Thus, the legislative history of § 523(a)(8) does not clearly indicate that § 2005(d) authorizes the discharge of an educational debt from the Armed Forces, irrespective of § 523(a)(8).

## III. CONCLUSION

For the foregoing reasons, we will affirm the decision of the District Court.

16